## 58755. SEXTON BROTHERS TIRE COMPANY v. SOUTHERN BURGLAR ALARM COMPANY OF GEORGIA, INC.

SOGNIER, Judge.

Southern Burglar Alarm Co. of Georgia, Inc. (Southern) installed a burglar alarm system for Sexton Brothers Tire Co. (Sexton) in 1971. The system was tied into Southern's office and the police department, and if the alarm went off one of Southern's employees would go to Sexton's building, meet an employee of Sexton's who would unlock the building and inspect the alarm system to see if a burglary had occurred or if the system malfunctioned. In December 1974 or January 1975 Brooks, an employee of Southern, and Brocato, an employee of Sexton, entered into a plan to steal tires from Sexton. Brooks would trip the alarm at Sexton, Brocato would be called to let Brooks into Sexton's building, and the two of them would then steal one or two truckloads of tires and sell them. Brooks' girlfriend was also an employee of Southern who monitored alarms from Sexton and always called Brocato; she then destroyed records of the incoming alarm from Sexton. This scheme was followed for approximately six months; in October 1975 Brocato confessed to stealing tires and indicated he and Brooks had stolen about 300 to 350 tires.

Sexton filed this action against Southern to recover the cost of the tires stolen, alleging they suffered a loss as a result of a conspiracy between some of their employees and Southern. The jury rendered a verdict for Sexton, but the trial court granted a motion by Southern for a judgment notwithstanding the verdict. Sexton appealed, and its sole enumeration of error is that the trial court erred in granting the motion for a judgment n.o.v. as Southern was not entitled to judgment as a matter of law.

While the gist of Sexton's argument is that the exculpatory clause in its contract with Southern is not enforceable, the only issue in this case is whether Brooks was acting as Southern's agent at the time he and Brocato stole tires from Sexton. It is apparent that Brooks was not at that time acting as Southern's agent. Southern's obligation under its contract was to install an electric

burglar alarm and to maintain it in good working order. Whenever the alarm sounded in Southern's office, one of its agents would go to Sexton's to determine the cause of the alarm. To accomplish this, one of Sexton's designated employees would meet Southern's agent and let him enter the premises to inspect the alarm system and make repairs if necessary. Nothing in the contract authorized the agent to enter Sexton's building for any other purpose.

Code Ann. § 105-108 provides, in pertinent part: "Every person shall be liable for torts committed by his ... servant, by his command or in the prosecution and within the scope of his business, whether the same shall be by negligence or voluntary." This court has held that " '[i]n determining the liability of the master for the negligent or wilful acts of a servant, the test of liability is, not whether the act was done during the existence of the employment, but whether it was done within the scope of the actual transaction of the master's business for accomplishing the ends of his employment.' " *Colonial Stores v. Sasser,* 79 Ga. App. 604, 606 (54 SE2d 719) (1949), citing *McGhee v. Kingman & Everett, Inc.,* 49 Ga. App. 767 (2) (176 SE 55). Accord, *Jones v. Reserve Ins. Co.,* 149 Ga. App. 176, 177 (253 SE2d 849) (1979). The evidence presented by Sexton did not show that stealing tires was within the the scope of Brooks' employment; on the contrary, the testimony by deposition of Brocato, Sexton's former employee, stated that he wouldn't consider Brooks to be acting on behalf of Southern [when he was stealing tires] and "I am sure he wasn't getting paid by the company [Southern] to do that." It is well-settled that the mere fact that a tortious act of an employee amounts to a crime does not, per se, relieve his employer from liability. The test of liability is the same as in cases where a non-criminal act is involved; the act must have been one authorized by the employer prior to its commission, ratified after its commission, or committed within the scope of the employment. 53 AmJur2d § 445. The evidence shows that Brooks was not acting within the scope of or in the prosecution of the business of Southern when he was stealing tires, and Southern did not ratify Brooks' actions. Sexton produced no evidence which connected the theft of tires with Southern's business or which showed that Brooks acted on

behalf of Southern when he stole the tires. The several thefts involved Brooks only and did not involve the employer. "There is no liability on the part of the master arising from the mere relationship of master and servant. [Cits.] . . . There is a long line of decisions to the effect that if the servant steps aside from his employment and acts without the scope of his master's business, and commits a tort, the master is not liable. [Cits.]" *Falls v. Jacobs Pharmacy Co.*, 71 Ga. App. 547, 549 (31 SE2d 426) (1944); *Jones v. Reserve Ins. Co.*, supra.

As the only business of Southern was to install and maintain electric burglar alarm systems, any action by Brooks in stealing tires would be personal and outside the scope of his employment. This court has held that an agent was acting on his individual responsibility, not on his master's business, when he committed an offense (assault and battery) arising out of a personal matter. *Jones v. Reserve Ins. Co.*, supra. Accordingly, the trial court did not err in granting the motion for a judgment n.o.v. In view of our decision on this issue, we need not address the questions relating to validity of the contract provisions.

*Judgment affirmed. McMurray, P. J., and Banke, J., concur.*

ARGUED OCTOBER 16, 1979 — DECIDED FEBRUARY 12, 1980 —

*Jerry L. Sims,* for appellant.
*H. Lane Young, William Q. Bird, Howell Hollis, III,* for appellee.